UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:18-CR-53-TBR

UNITED STATES OF AMERICA,                                          PLAINTIFF

v.

DANNY LEE REVLETT,                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

On November 13, 2018, Defendant Danny Lee Revlett was indicted on one count of conspiracy to distribute methamphetamine and one count of possession with the intent to distribute methamphetamine. [DN 1]. The Indictment also included a Notice of Forfeiture regarding $60,093.00 that was seized at Defendant's residence during the execution of a search warrant. [DN 1]. On August 23, 2019, Defendant pled guilty to both counts. [DN 30]. Pursuant to Defendant's plea agreement, the Government and Defendant jointly requested a hearing to determine whether the $60,093 was properly forfeitable to the United States under 21 U.S.C. § 853. *Id.* The Court held a forfeiture hearing on November 13, 2019. Subsequently, the United States filed a Memorandum, [DN 47], and Defendant responded, [DN 54]. This matter is ripe for adjudication. For the reasons set forth herein, the Court finds the funds seized at Defendant's residence are subject to forfeiture.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 32.2 sets forth the procedure for criminal forfeiture. "As soon as practical after a verdict or finding of guilty, . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. Proc. 32.2. "If the government seeks forfeiture of specific property, the court must determine whether the government has

1

established the requisite nexus between the property and the offense." *Id.* This determination "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." *Id.*

## DISCUSSION

In this case, the Government argues that the $60,093 seized at Defendant's residence is properly forfeitable pursuant to 21 U.S.C. § 853. Property may be subject to forfeiture pursuant to this statute when "it is the direct or indirect proceeds of the crime of conviction" or the property was used to commit or facilitate the crime of conviction. 21 U.S.C. § 853(a)(1)-(2); *United States v. Ferguson,* 385 F. App'x 518, 529 (6th Cir. 2010). "The property must bear a 'sufficient nexus' or 'substantial connection' to the underlying offense." *Ferguson*, 385 F. App'x at 529 (citing *United States v. Smith,* 966 F.2d 1045, 1055 (6th Cir. 1992)). The Government bears the burden of proving forfeiture by a preponderance of the evidence. *Id.* at 529–30. However, the Government is entitled to a rebuttable presumption that property is subject to forfeiture if it can establish by a preponderance of the evidence that (1) such property was acquired during the period of the violation or within a reasonable time after such period, and (2) there was no likely source for such property other than the violation. 21 U.S.C. § 853(d).

At the forfeiture hearing, Drug Enforcement Administration Special Agent Keith Varni testified regarding the investigation into Defendant's criminal activities and the execution of the search warrant at Defendant's residence. First, he stated that Defendant's co-conspirator, Greg Sallee, admitted to purchasing $120,000 of methamphetamine from Defendant. [DN 47 at 255]. Moreover, when law enforcement executed the search warrant at Defendant's residence, they located approximately six pounds of methamphetamine, as well as $10,000 in a safe in the master

bedroom and $50,000 in a safe in another bedroom. *Id.* During the execution of the search warrant, Defendant estimated the amount of money law enforcement officers would locate in each of the safes and stated that his wife had no knowledge of the money or methamphetamine located in the residence. *Id.* Additionally, Agent Varni testified that Jeffrey Willis, another individual involved in the conspiracy, informed law enforcement that he had seen approximately twenty pounds of methamphetamine at Defendant's residence and had been asked to count $138,000 in cash at the residence. *Id.* at 256.

Defendant testified at the hearing that he had been trafficking in methamphetamine for six to eight months before he was arrested. *Id.* He admitted to buying and reselling large quantities of methamphetamine and reinvesting the profits into his operation by purchasing more drugs. *Id.* at 257. On his 2018 taxes, Defendant claimed to have profited $35,000 from his methamphetamine sales. *Id.* During the forfeiture hearing, he admitted that $35,000 of the seized funds were proceeds of drug sales, but maintained that $25,000 was unrelated to drug activities. *Id.* He testified that he receives $3,500 each month from his boilermaker's pension and the Social Security Administration. [DN 54 at 287]. Additionally, his wife works as a teacher's assistant and their income is supplemented by rental property. *Id.* Furthermore, Defendant provided bank statements demonstrating that he withdrew more than $80,000 from his IRA between 2016 and 2018. [Defendant's Exhibit 2]. Finally, Defendant testified that he has always kept large amounts of cash in his home. [DN 54 at 288].

Defendant admits that $35,000 of the seized funds were direct proceeds of his crime. Therefore, the issue before the Court is whether the remaining $25,000 is subject to forfeiture. The Government's argument in favor of forfeiture focuses on Defendant's gross profits. Defendant testified he sold 17.5 pounds of methamphetamine during the course of his trafficking operation.

[DN 47 at 258]. Assuming all the methamphetamine was sold for the lowest price quoted by Defendant, $8,000 per pound, his gross profits would have been $140,000. *Id.* Since these funds were kept at the residence and commingled with Defendant's legitimate income, the Government argues that Defendant would have no way of knowing whether the money used to facilitate his trafficking operation was legitimate. *Id.* at 258–59.

In response, Defendant argues that the Government is not entitled to a rebuttable presumption of forfeiture. [DN 54 at 288]. The Court agrees. The Government failed to establish by a preponderance of the evidence that there was no likely source for the $60,093 other than drug trafficking. Defendant testified that he receives $3,500 each month, in addition to his wife's income and other income from rental properties, and provided documentation that he has withdrawn more than $80,000 from his IRA in the years leading up to his arrest. The Government did not refute these claims or fully address whether this money could constitute a portion of the seized funds. Since it appears that the $60,093 could have come from multiple sources, the Government is not entitled to a rebuttable presumption of forfeiture.

Accordingly, the Government must prove by a preponderance of the evidence that the seized funds were direct or indirect proceeds of drug trafficking or the funds were used to commit or facilitate the crime. Based on the evidence in the record, the Court concludes that this burden has been met. Even if a portion of the $60,093 was legitimate when Defendant placed the money in his safes, he admitted to comminglingly those funds with his drug proceeds. [DN 41 at 235]. A photo taken of the money at the time it was seized shows large quantities of one-hundred-dollar bills rubber banded together. [Government's Exhibit 1]. Thus, it appears highly unlikely that Defendant would have been able to discern the legitimate funds from the illegitimate funds after they were placed in the safes. Instead, Defendant would have used a mixture of both types of

money to reinvest in his trafficking operation by purchasing more methamphetamine. Therefore, the Court finds that the entire $60,093 is forfeitable pursuant to 21 U.S.C. § 853 as funds used to facilitate the crime of conviction.

## CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED**: the $60,093 seized during the execution of the search warrant at Defendant's residence shall be **FORFEITED** to the United States.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 13, 2020

CC: Attorneys of Record.